STATE OF IOWA, Appellant, v. A. M. HENDERSON.

**Banks and banking:** FALSE STATEMENT: INDICTMENT. An indictment charging a bank official with knowingly making a false statement with intent to deceive any person authorized to examine the bank's condition, should so describe the statement charged and the person to whom made as to individuate the alleged offense, and enable the defendant to know what is intended.

**Same.** Where the alleged false statement of a bank official is in writing it should be set out, or its substance stated, in the indictment; but if its substance is stated, failure to allege whether oral or written, will not render the indictment demurrable.

**Same.** An indictment charging in general terms that the alleged false statement of a bank official, concerning the bank's condition, is made to the directors is demurrable, for the directors are not included among those to whom the making of such false statement is denounced as a crime.

*Appeal from Iowa District Court.*— HON. R. P. HOWELL, Judge.

TUESDAY, OCTOBER 15, 1907.

THE indictment, after reciting the date and venue, alleged that the accused, who " was then and there the cashier and an officer or employé of the Marengo Savings Bank, a corporation duly incorporated under the laws of the State of Iowa for a general banking business, did knowingly, willfully and feloniously make a false statement of what purported to be the actual financial condition of the said Marengo Savings Bank to the directors of the said bank, they being the managers of the business and property of the said bank and authorized by law to examine its condition, which statement was made with the intent to deceive the said directors of the said Marengo Savings Bank, as aforesaid; that said statement was false and failed to show the true condition of the said savings bank; that said defendant in said statement reported the overdrafts of individuals to be four hundred and sixty-six dollars and twenty-eight cents ($466.28), whereas, in truth and in fact, the same exceeded said amount by the sum of, to-wit, fifteen hundred dollars ($1,500), and, further, the said statement showed that there was due from banks to the said Marengo Savings Bank the sum of seventeen thousand twelve dollars and fifty-eight cents ($17,012.58), whereas, in truth and in fact, there was,

to-wit, the sum of fifteen hundred dollars less due to the said Marengo Savings Bank from banks; that the said statement was made by the said defendant with the intent to deceive the directors of the said Marengo Savings Bank, contrary to the statute in such cases made and provided." The defendant demurred on the grounds, aside from those of uncertainty, that: " (3) It is charged in said indictment that ' defendant did make a false statement,' but it nowhere appears in said indictment that said statement was oral, or in writing, and if in writing the same is not set forth in the indictment, nor is the same described in such a way as to enable the defendant to prepare for trial. (4) The indictment alleges that the said false statement was made with intent to deceive the directors of the Marengo Savings Bank, and the same does not constitute any crime under the laws of Iowa." The demurrer was sustained, and the defendant discharged. The State appeals.— *Affirmed.*

*H. W. Byers, Chas. W. Lyon, W. E. Wallace,* and *Milton Remley,* for appellants.

*Wade, Dutcher & Davis, Thos. Stapleton, Tom Milner,* and *J. F. Kirby,* for appellee.

LADD, J.— The two grounds of the demurrer to the indictment, argued by counsel for the State, are: (1) The omission to allege whether the false statement by the defendant as cashier was oral or in writing; and (2) the further omission to allege that such statement was made to persons authorized by law to examine the condition of the bank. On these the trial court based its ruling by which the indictment was adjudged insufficient. The offense undertaken to be charged is defined by section 1887 of the Code, which provides that: " Any owner, director, officer, agent, employé or clerk of any bank, who shall knowingly subscribe

1. BANKS AND BANKING: false statement: indictment.

or make any false statements or false entries in the books thereof, or knowingly subscribe or exhibit false papers, with intent to deceive any person authorized to examine its condition, or shall knowingly subscribe and make false reports, or shall knowingly divert the funds of the bank to other objects than those authorized by law, shall be punished by a fine of not exceeding ten thousand dollars, and be imprisoned in the penitentiary not less than two or more than five years, and be forever after barred from holding any office created by this chapter." The statement mentioned in the statute is the basis of the offense alleged, and it should be described and the persons to whom made with such particularity as to individuate the offense charged and enable the defendant to know what is intended. As contended by the State, an indictment in the language of the statute is sufficient if it accomplishes this. *State v. Porter,* 105 Iowa, 677; *State v. Baugness,* 106 Iowa, 109.

But it is manifest that the section quoted does not so describe the crime, for innumerable statements may be made by the officer or employé which, though false, would not subject him to the penalties imposed. The rule is elementary that, where the basis of an offense is a written instrument, it should be set out in *hæc verba,* or else the substance stated. See *Langford v. State,* 45 Ala. 26; *Baker v. State,* 14 Tex. App. 332. This last was done by pointing out wherein the alleged statement was false, i. e., in representing the individual overdrafts on the bank as $466.28, whereas they exceeded the sum of $1,500; and the amount due from other banks as $17,012.58, whereas $1,500 less was due therefrom. But it was not alleged whether it was in writing or oral. This is not ground for demurrer, for the indictment would be good in either event. The false statement having been described with sufficient definiteness to point out the particular offense charged, another remedy is open to the accused if it

2. SAME:

shall become important for him to know whether the statement is in writing, and, if so, to examine it.

II.   The indictment charges generally that this statement was made to the directors of the bank.   The statute authorizes a directorate of not less than five nor more than nine persons.   Section 1845, Code.   How many this bank had, and whether the statement was made to all of them as a board, or two or more of them when together, or to all or several of them by making it to each separately, is not averred.   In this respect the indictment is too indefinite, even were it the design of the statute, to include directors as such within the class of persons to whom the making of the false statement is prohibited.   But we do not think such is the design of the statute.   True it is that they as well as the stockholders, under proper restrictions, may examine into the condition of the bank.   In doing so, they act lawfully.   So does a creditor or stranger when permitted by the officers of the bank to examine it.   But upon none of these is imposed the duty of making examination into the precise condition of the bank.   A stockholder is under no obligation to do so, nor is the director, unless a member of the examining committee, save under circumstances which would render him negligent in omitting so to do.   If the statute is to be construed as appellant contends, then a false statement to a creditor or stranger, when authorized by the officers to examine the condition of the bank, would render the officer, or employé making it amenable to the penalties of the statute.   Such could not have been the intention of the lawmakers.   The clause, " any person authorized to examine its condition," should be construed to have reference to the preceding provisions in the same chapter, designating who shall make such examinations.   Section 1871 requires the board of directors at their annual meeting to " appoint from its number an examining committee of not less than two which shall examine the condition of the bank at least every quarter and

3. SAME.

report the same in writing duly signed to the board, who shall cause said report to be recorded in the directors' minute book of the bank." Section 1873 provides that " the Auditor of the State may, at any time he may see proper, make or cause to be made an examination of any savings or State bank," and he may, under 1875, appoint bank examiners for this purpose. These are the persons to which section 1887 has reference. That section was first enacted as section 3 of chapter 30, of the Acts of the Twenty-fifth General Assembly; but the law·with respect to examinations by or under the direction of the Auditor of State had been on the statute book since the Fifteenth General Assembly, at least, and the appointment of and examination by a committee of directors was required by section 4 of the chapter last cited. So there is nothing in the genesis of the section indicating that its language should be accorded a wider application.

Aside from the ordinary rule which exacts a strict construction of criminal statutes, it is to be observed that the penalty imposed is extremely severe, and it can hardly be thought that the Legislature intended such punishment to follow an attempt to deceive any person in the manner described, save he be one specially designated by law to examine the condition of the bank for some public purpose. True, as argued, the directors manage and are in control of the bank, and as such are entitled to look into its condition, but their findings are not required to be made of record. Their inquiries are for immediate purposes, while the result of the investigation by the committee is reduced to writing and preserved by being spread upon the records of the bank. The examinations by the auditor or examiners acting for him have for their object the ascertainment of the true condition of the bank as compared with the quarterly statements furnished him by it, to the end that he may protect the public in its relations therewith by directing the discontinuance of any unlawful practices or take possession thereof and pro-

cure the appointment of a receiver (section 1877, Code), or, in case of the impairment of the capital, require an assessment on the capital stock (section 1878, Code), and to report the condition thereof to the Governor (section 1881, Code). The gravity of the offense of the deception as defined by section 1887 is because of the importance of the duties imposed on the auditor and the use likely to be made by him and others of the reports of the examining committee, and we are of the opinion that none other than such committee, the auditor and examiners appointed by him, authorized by the preceding sections of the chapter, were contemplated by the clause " any person authorized to examine its condition." Statements with intent to deceive others would be no more reprehensible than like attempts in other relations of life not denounced by statute.

The ruling by which the demurrer was sustained was correct, and the judgment is *affirmed.*